THE STATE v. JAKE LONDON ET AL.

Decided February 28, 1923.

**Weight of Evidence—Manufacture of Burglar's Tools—Indictment for Breaking and Entering.**

On error to the Essex Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and TRENCHARD.

For the plaintiffs in error, *John W. McGeehan, Jr.*

For the state, *John O. Bigelow,* prosecutor of the pleas, and *J. Victor D'Aloia,* assistant prosecutor.

PER CURIAM.

The grand jury of Essex county presented an indictment against Jake London, Issy Presser, Louis Silver and Jack Brice, charging that they criminally conspired to break and open the safe of one Emil Germanus, in his store, in the city of Newark, and unlawfully steal and carry away the contents

thereof, and that, in the execution of this conspiracy, Silver drew a design for an implement adapted for forcing or breaking open safes, and that the others caused the implement to be made. When the trial of the indictment was moved there was a severance as to the defendant Brice, and the trial proceeded against the other three, who were convicted in manner and form as charged in the indictment.

It is to be observed that the indictment does not charge the breaking into the safe or any attempt to do so, but merely the entering into a conspiracy to do so, and the manufacturing of a tool to be used for the purpose. There was proof that Silver did design such a tool, and that the other defendants, or some of them, caused it to be manufactured; but our examination of the testimony sent up with the writ of error fails to disclose any fact which supports the averment of the state that this tool was manufactured for the specific purpose of breaking into and robbing the safe of Germanus. From anything that appears to the contrary (with the exception hereafter stated), the manufacture of this so-called burglar's implement might have been for the purpose of robbing a safe in any store in the city of Newark; and, of course, in order to sustain a conviction on this indictment, the burden rested upon the state to prove beyond a reasonable doubt that the conspiracy was for the specific purpose laid in the indictment. As we have said, we find no evidence at all upon this point, except an alleged confession of Presser that the purpose for which the tool was manufactured was the robbing of the Germanus safe. But that confession, of course, was only evidential against him. It was not originally made in the presence of the other defendants, and, although it was repeated afterward at police headquarters in the presence of London, who was brought in for the purpose of being confronted with Presser, he (London) absolutely denied the existence of any such conspiracy as that indicated by Presser's confession.

One of the grounds upon which we are asked to reverse is that the verdict found by the jury was against the weight of the evidence, and our conclusion is that this point is well taken. It is true that the verdict against Presser would have

been justified if there had been anything in the case to show a corrupt agreement between him and any one of the other defendants; but, in the absence of such testimony, it seems to us manifest that there could be no finding of guilt on his part unless there was proof which would justify the jury in associating one of the other defendants in the criminal agreement.

The next reason upon which a reversal is asked is based upon the refusal of the court to charge the following request: "If you find that the defendant Louis Silver did not participate in the agreement to enter the place of Germanus with intent to break open the safe, as charged in the indictment, then, even though there was an agreement to commit another crime, he cannot be found guilty of the crime as charged in this indictment." The same request was submitted on behalf of each of the other two defendants. That the request contained a proper rule of law cannot be successfully disputed. It is true that the refusal to charge it was not absolute, but was qualified by the statement on the part of the court that it was refused to the extent that it had not been theretofore charged. Our examination of the charge to the jury fails to disclose anything contained in it which embodies the instruction requested, and, this being so, the refusal to charge was harmful error.

The only other ground upon which a reversal of this conviction is sought is based upon the following instruction to the jury: "If the facts proved are, in the opinion of the jury, explainable on any reasonable hypothesis other than that the prisoner is guilty, then the accused is entitled to an acquittal, but if they are not, in the opinion of the jury, explainable on any reasonable hypothesis other than that of guilt, then they are sufficient to warrant a conviction." The vice of this instruction, it is argued, is that it permits the jury to convict unless they are able to discover a reasonable hypothesis arising out of the facts upon which the innocence of the defendants of the charge laid against them might be rested, and so deprives them of the right to be acquitted unless the jury, after a consideration of all the proofs, are satisfied beyond a reasonable doubt of their guilt. It is true that the court

in another part of the charge properly instructed the jury upon the question of reasonable doubt, but whether the effect of that instruction was to wipe out the impression which the portion of the charge under consideration may have made on the minds of the jury is quite uncertain. We do not, however, find it necessary to determine whether or not the instruction contains harmful error, because of the fact that this judgment must be reversed for the reasons already indicated. We content ourselves with saying that, in its essence, it is quite similar to that which was condemned by this court in the case of *State* v. *Tischler,* decided by this court at the February term, 1922.

For the reason indicated, the judgment in this case will be reversed.